## Case No. 7,434.
### The JOHN WURTS.
[Olc. 462; [1] 16 Hunt, Mer. Mag. 383.]
District Court, S. D. New York. Feb., 1847.

[1] [Reported by Edward R. Olcott, Esq.]

J. C. Hart, for libellants, Curtis and others.
Burr & Benedict, for Jones and his associates.
J. M. Mason, for claimants.

BETTS, District Judge. Upon the facts in this case the claim of Jones and owners of the Excelsior to salvage cannot be allowed. It lacks the indispensable ingredient of a salvage service: that of having contributed immediately to the preservation or rescue of the property in peril at sea. The circumstances in proof do not demand of the court a decision upon the point, how far a person must be directly employed aiding the recovery of a wreck to constitute him a salvor. Nor am I disposed to lay down the rule that he must make it certain the property was saved by his assistance; but I am not aware of any principle which invests him with the rights and privileges of a salvor, until it is rendered reasonably probable upon the evidence that his labor or skill have contributed towards protecting property exposed to instant peril at sea from ultimate loss or further damage. An impression seems to have obtained, that one who finds derelict property under water or afloat, acquires a right to it by discovery, which can be maintained by a kind of continued claim, without keeping it in possession or applying constant exertions for its preservation and rescue. There is no foundation for such notion.

The right of a salvor results from the fact that he has held in actual possession or has kept near what was lost or abandoned by the owner or placed in dangerous exposure to destruction, with the means at command to preserve and save it, and that he is actually employing those means to that end. The finder thus becomes the legal possessor, and acquires a privilege against the property for his salvage services which takes precedence of all other title. Lewis v. The Elizabeth & Jane [Case No. 8,321]; The Bee [Id. 1,219]; Wilkie v. Two Hundred and Five Boxes of Sugar [Id. 17,662]. The law will protect him against all interference by others, even the true owners, until he is adequately rewarded or opportunity is allowed to bring the property to a place of safety, and have his compensation secured him by the judg-

ment of the proper tribunals. The fact that property is found at sea or on the coast in peril, without the presence of any one to protect it, gives the finder a right to take it in his possession; and the law connects with such right the obligation to use the means he has at control, and with all reasonable promptitude, to save it for the owner. He can therefore be no otherwise clothed with the character of salvor than whilst he is in the occupancy of the property, and employing the necessary means for saving it. Notorious possession, with the avowal of the object of such possession, are cardinal requisites to the creation or maintenance of the privileges of a salvor; where they do not exist, any other person may take the property with all the advantages of the first finder.

This is the clear policy of the law. It rewards with liberal generosity a meritorious salvor, but counts first in the order of his meritorious acts a prompt use of sufficient means, both in getting at property needing relief and abiding with it until its salvage is completed. The value of his services is enhanced and their compensation augmented proportionally to the danger and loss to the salvor accompanying such exertions and their benefit to the owner. No one of these cardinal qualities appears in support of this claim. The most that is proved in favor of the owners of the Excelsior is, that being in port after having left the wreck, they directed apparatus to be prepared here to aid in raising it. A fortnight or three weeks were consumed awaiting such preparations, the wreck in the mean time being left deserted, with the exception that the Excelsior and crew were once alongside of it for about twelve hours. Under those circumstances, any other persons going to the wreck and effecting its saving would have been entitled to the rights of sole salvors. The claim becomes infinitely weaker, when set up after the wreck had been forced from the place where it grounded, and was driven by the winds and waves for nearly a month to and fro out at sea, and along the coasts. I accordingly pronounce against the claim of the owners of the Excelsior, and only refrain imposing costs on them because of the loss and expense incurred by them in making their preparations and efforts, amounting to $120 or $130, independent of the time employed by the Excelsior and her crew in their fruitless efforts. If they have any right to compensation for services rendered prior to the written agreement, it cannot be enforced in this action. They must look to the owner personally on his contract with them. The right of the other libellants to a reasonable reward is not denied by the owner; but he seeks by his defense to prove that one or two hundred dollars would be a full compensation for the time occupied and assistance given by the libellants on the occasion.

It is unnecessary to repeat the principles entering into the determination of a salvage reward; they have been too often discussed and stated in the decisions of maritime courts' to leave any important illustration of the doctrines unexplained. There can be no doubt of the rightful authority of the court to regulate the award of compensation very much at discretion; but all judicial tribunals find fixed rules of adjudication, when at all applicable to the subject, more useful and satisfactory in operation than mere discretionary allowances, however discreetly they may be allotted. Tyson v. Prior [Case No. 14,319]. Accordingly, maritime courts, when not governed by positive law in this respect, have, by a kind of common concurrence, favored an allowance, if in cases of derelict, of from one-third to three-quarters of the salved property to the salvors, varying the amount between these points by regard to the special nature of the services, the peril and toil incurred and value of property saved, and hazard to property employed in making the salvage. The Jubilee, 3 Hagg. Adm. 43, note; Abb. Shipp. (Story's Ed. 1829) p. 398. The growing preference, however, to determinate rules of compensation in salvage cases, has so far settled upon a moiety as the proper rate of division in cases of absolute derelict, that it may almost be termed the habit of courts to give that proportion when no imperative consideration induces them to deviate from it. The Henry Ewbank [Case No. 6,376]; Bond v. The Cora [Id. 1,620]. The extraordinary merit of the services may augment the share awarded, or the large value of the property saved diminish the allowance. No sagacity could hope to select a fixed amount, which would in every instance be an appropriate compensation. A moiety, however, approximates sufficiently near to accomplish most of the important benefits which salvage rewards were designed to subserve, comprehending the general interest of maritime commerce and a reasonable partition of the imperiled property between the owner and the party instrumental in recovering and restoring it. Courts accordingly are inclined to countenance that method of fixing the reward, unless special circumstances call for a discriminating valuation. The Waterloo [Id. 17.257]; The Galaxy [Id. 5,186]. I think none such exists in this case, nor on a careful estimate of the services rendered, with a view to the small value of the property saved, and the probability that little or nothing could be realized from the adventure and the actual benefit to the owner, do I regard six or seven hundred dollars a disproportionate compensation to be specifically awarded the libellants for what was performed by them.

I therefore decree in their favor the costs of suit, first to be paid out of the proceeds in court, and then, that they receive the moiety of the residue for the salvage services rendered in this case. Unless the mode of distribution between the libellants is adjust-

ed amongst themselves, it must be referred to a commissioner to ascertain and report the proportion payable to each, and to each vessel employed in rendering the salvage service.